SUAREZ, J.
 

 The State of Florida appeals from the trial court’s order granting Luis Ferrey’s motion for new trial. We affirm.
 

 Ferrey was charged with burglary of a dwelling with assault or battery, and attempted sexual battery. Prior to trial, the State announced that it would not be calling the victim’s neighbor, Carlos, as a witness at trial; he was stricken from the witness list and the trial court noted that he would not testify. At trial, the victim testified that she was awakened from her sleep by a noise in her bedroom. A man grabbed her by the throat and attempted to sexually assault her. When she screamed, he ran from the house. The victim made a hesitant identification of Ferrey during trial. In response to the question of whether or not she saw her attacker in the courtroom she pointed hesitantly at Ferrey and testified that she could not make out the details of her attacker’s face during the assault because the room was dark but that Ferrey looked a little different. She went on to say that she was “almost sure” he was the assailant and that his physique resembled that of her assailant. During her direct examination, the victim identified “Carlos” as her next-door neighbor and referred to him several times. Following these references to Carlos, a non-testifying witness, the victim recounted the facts of her assault.
 

 Detective Quinones next testified that as part of his investigation, he obtained information from the victim’s neighbor, Carlos. The trial court sustained several objections from the defense for repeated mention of Carlos, the absent witness, and the hearsay containing Carlos’s statements inferring that Carlos actually had observed the suspect.
 
 [1]
 
 The trial court at one point in
 
 *179
 
 structed the prosecutor not to mention Carlos or elicit any testimony referring to Carlos and warned that she would grant a mistrial if the State continued to suggest that there was additional evidence of guilt that the jury would not hear. After close of the defense case, the jury asked whether they could use the reference to Carlos made by another witness; the court answered that the statement had been stricken and they could not use it in their deliberations. The jury found Ferrey guilty on all counts. The defense subsequently filed a motion for new trial, citing the independent and cumulative effects of the references to Carlos and his out-of-court statements. The State argued that the error was harmless, was properly cured, and bad no effect on the jury’s verdict. The trial court found otherwise and granted the defendant’s motion for new trial.
 

 The State argues that
 
 Hernandez v. State,
 
 547 So.2d 138 (Fla. 3d DCA 1988), should control the outcome of this case. In
 
 Hernandez,
 
 the investigating detective was allowed to testify that as a result of interviews with various witnesses he began looking for the defendant.
 
 Id.
 
 The non-testifying witnesses referred to in the detective’s hearsay testimony were not eyewitnesses to the crime charged and it was not clear from the record what incriminating information they gave to him, leading to the defendant’s arrest.
 
 Id.
 

 
 *180
 
 We find, however, that the facts presented in Ferrey’s case are more closely allied with those of
 
 Postell v.
 
 State, 398 So.2d 851 (Fla. 3d DCA 1981) and its progeny. In
 
 Postell,
 
 the prosecutor elicited, through the testimony of a police officer, the out-of-court declarations of an unidentified eyewitness to the armed robbery with which Postell was charged. In that case, the Third District held that, “where, as in the present case, the inescapable inference from the testimony is that a non-testifying witness has furnished the police with evidence of the defendant’s guilt, the testimony is hearsay, and the defendant’s right of confrontation is defeated, notwithstanding that the actual statements made by the non-testifying witness are not repeated.”
 
 Id.
 
 at 854.
 

 In the case before us, Detective Quinones testified that the victim told him that there were
 
 witnesses that actually observed the possible suspect,
 
 and that after interviewing the victim he responded to the victim’s neighbor, Carlos,
 
 who was a witness,
 
 and asked him what he had seen. The prosecutor several times, over defense objection, stated, “based on your conversation with Carlos ...” Both the State and the detective continued to refer to Carlos as “the witness,” although Carlos was not called to testify at trial and had been stricken from the witness list.
 

 The trial court correctly granted the defendant a new trial. With Carlos’s identity as the victim’s neighbor firmly in the jury’s mind from the victim’s direct testimony, the State engaged in a series of attempts to introduce Carlos’s out-of-court statements through the detective’s testimony. The State improperly elicited inferential hearsay multiple times during the detective’s examination, which gave the jury the distinct impression that someone else identified Ferrey other than the victim. Following the analysis in
 
 Postell,
 
 the logical inference that followed this challenged inadmissible hearsay was that Carlos, a non-testifying witness, gave the detective accusatory information which ultimately led to Ferrey’s photo being placed in the lineup, and his subsequent arrest. This violated Ferrey’s right to confront witnesses against him and prejudiced his right to a fair trial. We find that the error was pervasive, not harmless in light of the jury’s questions about this evidence, and the trial court did not abuse its discretion by granting the motion for new trial.
 

 Affirmed.
 

 [1]
 

 . The prosecutor's direct examination proceeded as follows:
 

 Q. [by PROSECUTOR]: What did you do after [M.O.] told you what happened to her that day?
 

 A. [by DETECTIVE QUINONES]: Well, she had also mentioned that there were witnesses that actually observed the possible suspect—
 

 [DEFENSE]: Objection to hearsay.
 

 THE COURT: Sustained.
 

 Q. [by PROSECUTOR]: Without getting into details of what she said, what did you do after she gave you her account of what happened?
 

 A. [by DETECTIVE QUINONES]: After she gave me her statement, I responded to a neighbor, her neighbor, which is the witness, and I asked him what he had seen at the time.
 

 Q. [by PROSECUTOR]: Do you remember his name?
 

 
 *179
 
 A. [by DETECTIVE QUINONES]: First name of Carlos. I can't remember, recall the last name right now.
 

 Q. [by PROSECUTOR]: Do you remember what day it was when you spoke to Carlos?
 

 A. [by DETECTIVE QUINONES]: It was July 16. That same evening.
 

 Q. [by PROSECUTOR]: And based on your conversation with Carlos, what—
 

 DEFENSE: Objection.
 

 Q. [by PROSECUTOR]: Based on your conversation with Carlos, what did you do?
 

 THE COURT: Sustained.
 

 Q. [by PROSECUTOR]: Were you able to speak to Carlos?
 

 A. [by DETECTIVE QUINONES]: Yes.
 

 At this point, the judge called a sidebar and instructed the State not to mention Carlos again. The judge warned a mistrial would be granted if the Stale continued to suggest that there was additional evidence of guilt that the jury would hear. Following the sidebar, the State continued its direct examination.
 

 Q. [by PROSECUTOR]: What did you do next?
 

 A. [by DETECTIVE QUINONES]: I knocked on the witness' door and asked him what had happened and what he had seen, and if he could provide me with a written statement.
 

 [DEFENSE]: Objection.
 

 THE COURT: Sustained.
 

 Q. [by PROSECUTOR]: What did you do next?
 

 THE COURT: Why don't you ask him more specific questions?
 

 Q. [by PROSECUTOR]: Did there come a time when you came into contact with someone who later became known to you as Luis Ferrey?
 

 A. [by DETECTIVE QUINONES]: Yes. The witness Carlos—
 

 [DEFENSE]: Objection.
 

 THE COURT: Sustained.
 

 Even after the court’s warnings, Detective Quinones made two more statements referencing Carlos to which the court sustained the defense's objections.
 

 Q. [by PROSECUTOR]: Detective, did there come a time when you came into contact with someone who later became known to you as Luis Ferrey?
 

 A. [by DETECTIVE QUINONES]: Yes, there was. I went to Southwest 7th Street to some apartments that I was told he might be in.
 

 [DEFENSE]: Objection. Hearsay.
 

 THE COURT: Sustained.
 

 DETECTIVE QUINONES: Someone by the name of Luis might—
 

 [DEFENSE]: Objection. Move to strike.
 

 THE COURT: Sustained.
 

 At the conclusion of the State's case, the defense called Ms. Salazar. During the prosecutor’s cross-examination of Ms. Salazar, she testified that she heard the victim scream the night of the incident and then walked outside the front door. Subsequently, the prosecutor proceeded with a line of questioning alluding to Carlos, the non-testifying witness, as the "man standing outside” on the night of the incident.